FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| M.R.<br><br>Plaintiff,<br><br>v.<br><br>Stockton University,Zachary Madle,<br>Pi Kappa Phi, John Does (1-20)(Fictitious Individuals); A-Z OWNER CORPORATIONS (1-20)(Fictitious Corporations)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.:<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Plaintiff, M.R. by and through her attorneys, the Fuggi Law Firm, hereby files the following Complaint against Defendants as captioned above.

<u>**PARTIES**</u>

1. Plaintiff M.R. is a female who at the time of the events complained of herein was a first year student at Stockton University.

2. At all material times Plaintiff was living at Stockton University while maintaining a residency in Brick, NJ 08723.

1

3. M.R. at the time of the incident was majoring in Criminal Justice at Stockton University with the lifelong dream of one day becoming a detective.

4. M.R. chose to attend Stockton University because the school has a well-respected Criminal Justice Program.

5. Another significant reason M.R. chose Stockton University to further her education was that Stockton University advertised that the University maintained a very safe campus atmosphere, reporting only four sexual assaults per school year, which is low according to the national average.

6. At the time of events complained of herein the Plaintiff was an on campus resident of Stockton University living in Freshman Dorm P111.

7. While adjusting to college life, and earning average grades in her first semester, M.R. entered into her Spring semester with a focused and determined attitude and had all A's in her classes up until the night of the sexual assault.

8. The Defendant Stockton University is located in Galloway Township in Atlantic County, New Jersey, and is a public undergraduate and graduate university of the arts, sciences and professional studies of the New Jersey state system of higher education.

9. At all material times, Defendant Zachary Madle was an alumni of Stockton University Class of 2015 and former

2

member of the fraternity, Pi Kappa Phi at Stockton University.

10.     Defendant Pi Kappa Phi fraternity house is located at 600 W. White Horse Pike, Egg Harbor City, New Jersey 08215.

11.     Defendant Zachary Madle is a bartender at the Flow House in Wildwood, New Jersey where he gained experience in manipulating and altering drink concoctions.

12.     On at least one occasions the Defendant, Zachary Madle used a date rap drug/drink spiking in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

13.     At all material times, the Title IX Coordinator of Stockton University was an agent and/or employee of Defendant Stockton University, acting or failing to act within the scope, course, and authority of her employment and her employer.

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to

be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## III. APPLICABLE LAW AND POLICY

6. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states that No person in the United States

4

shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

7. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106.

8. 34 C.F.R. § 106.8(b) provides: . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

9. In _Gebser v. Lago Vista Independent School District_, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

10. In _Davis v. Monroe County Board. of Education_, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in _Gebser_ to cases where the harasser is a student, rather than a teacher.

11. _Davis_ held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is a) deliberately indifferent to sexual harassment of which the

recipient has actual knowledge, and b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. Davis, 526 U.S. at 1669-76.

12. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## STATEMENT OF FACTS

13. The Plaintiff, M.R. first met the Defendant Zachary Madle, on the day of February 9, 2017 and later that night at a Fraternity Party at the Pi Kappa Phi house, which is located in the surrounding area of Stockton's campus.

14. At the Fraternity Party, the Plaintiff was drinking "Jungle Juice", a mixture of mostly Vodka mixed with Fruit Punch that was provided by the fraternity house.

15. The fraternity house did not allow other students who did not reside at the Pi Kappa Phi house to bring their own alcohol on to the premises, but rather forced Stockton students attending their parties to drink the alcohol provided by Pi Kappa Phi members.

16. Every Thursday Pi Kappa Phi held a house party where many Stockton students would attend, regardless if they were underage and were served alcohol.

17. The party of February 9, 2018 was invitation only, and only girls were invited to attend the party.

18. While at the party, the Plaintiff M.R. was introduced to the Defendant Zachary Madle. The plaintiff's friend, K.M. met Defendant Zachary Madle's friend at the party.

19. K.M. left the Plaintiff at the party around midnight. The Plaintiff later left the party on the shuttle bus accompanied by Defendant Zachary Madle and his friend who both stayed at her dorm room overnight.

20. The next morning around 9:30 a.m. the Plaintiff woke up with a sore vagina, and found Defendant Zachary Madle and his friend still in her dormitory room.

21. The Plaintiff wanted to get breakfast and was upset to find both Defendant Zachary Madle and his friend still in her room. She asked them both to leave, but they insisted they all get breakfast together. The Plaintiff asked again for the two to leave, but Defendant Zachary Madle and his friend thought the Plaintiff was joking.

22. The Plaintiff finally made it clear she wanted Defendant Zachary Madle and his friend to leave and that she was not joking about getting breakfast without them. Both Defendant

7

Zachary Madle and his friend finally went outside and left in an Uber.

23. The Plaintiff left to go get breakfast after she saw that both Defendant Zachary Madle and his friend were no longer outside her dormitory.

24. M.R. later learned from K.M. that Defendant Zachary Madle had non-consensual sex with M.R. while she had been incapacitated.

25. The second encounter between the Plaintiff and Defendant was on February 15, 2017 on the Stockton campus around midnight.

26. It was Valentine Day and the Plaintiff and the Defendant were texting each other throughout the day getting to know each other.

27. M.R. and K.M. had spent the night driving around Galloway Twp. and decided to get something to eat at McDonald's. M.R. had not consumed any alcoholic beverages and did not plan to for the remainder of the evening. They both returned back to their dorm room for the night.

28. Then at around midnight, the Defendant, Zachary Madle showed up at the parking lot number six, outside of the Plaintiff's dormitory (P11 Freshman Dorm).

29. The Plaintiff and the Defendant went into her dormitory room where the Defendant presented bottles of Stoli Vodka he had

snuck into the Plaintiff's dorm room by way of a black backpack.

30. The Plaintiff remembered she had to register the Defendant as a guest at another building on the campus so he would not get a ticket for parking on campus. The Plaintiff then went to register the Defendant, and afterwards the two went back to the Plaintiff's dormitory.

31. While in the dormitory the Defendant opened up the two bottles of Stoli Vodka. The Defendant also brought eight ounce cups and small cans of iced tea and lemonade and made and mixed all of the drinks.

32. The Plaintiff and Defendant were sitting on the edge of the Plaintiff's bed conversing. The Plaintiff told the Defendant that she "wanted to remember this time" because it was Valentine's Day. The Defendant replied "We'll see". The Plaintiff found this comment to be very odd at this time.

33. While conversing with the Defendant the Plaintiff drank what she thought was between two to three cups of wine. The Defendant kept passing the bottle of Vodka to the Plaintiff stating "Here drink this", to which the Plaintiff declined.

34. Then, Plaintiff went to use the bathroom in the hallway outside of her dormitory. The Defendant proceeded to follow her out to the hall, but waited outside of the bathroom stalls.

35. Later that evening, the Plaintiff used the bathroom a second time, but the Defendant stayed in the room and did not follow the Plaintiff, which allowed Defendant Zachary Madle the opportunity to spike/drug the Plaintiff's drink.

36. Upon returning to her room from the bathroom the Plaintiff changed in to more comfortable clothing for bed. The Defendant did turn away while she was changing her clothing.

37. At no point during the night did a Stockton University resident assistant or "RA" or campus security check on the Plaintiff's dormitory, which had loud music playing and underage drinking throughout a majority of the night.

38. Defendant Stockton University had direct knowledge that Defendant Madle was in the Plaintiff's room as she had properly registered Defendant Madle, giving Stockton University notice of Defendant Madle's presence in M.R.'s freshman dorm room.

39. After the Plaintiff finished changing her clothing the Defendant who was sitting on the Plaintiff's bed grabbed her hands and pulled her towards him and kissed her. The Defendant then stood up and turned the Plaintiff around so that she was facing towards her bed.

40. Defendant Madle gave the Plaintiff another drink and the Plaintiff's last memory was of kissing the Defendant on the edge of her bed before she blacked out as she believed she

was drugged. The Defendant then took off the Plaintiff's clothing while she was unconscious and sexually assaulted/raped her.

41. While the Plaintiff was unconscious the Defendant took a video of the sexual assault and rape on the phone App "Snapchat" and published it.

42. The Defendant then posted videos of the sexual assault on his Snapchat account, which was available for 24 hours for the public to view.

43. The next morning the Plaintiff woke up naked, confused, choking and covered in vomit as the Defendant had taken off the Plaintiff's clothing while she was unconscious and sexually assaulted/raped her.

44. The Plaintiff checked her phone and saw text messages from the Defendant. The Defendant fabricated a story to cover up his sexual assault, stating that someone tried to break in to the Plaintiff's dormitory and while chasing them away he became locked out of the dormitory.

45. The Plaintiff stated "he had taken his backpack but left behind the bottles of Vodka, ice tea cans and the eight ounce cups we were drinking from."

46. While the Plaintiff was using her phone she began using the Snapchat app when she came across Zachary's "Snapchat stories" he had posted. In two of the videos the Plaintiff

11

was still wearing her bra and panties, but in the last video the Plaintiff was completely naked.

47. The Plaintiff started sending texts in a group chat with her friends asking for help after seeing the Defendant's "Snapchat stories".

48. The Plaintiff's friend B.C. left her class and came over to the Plaintiff's dormitory. B.C. called the Resident Advisor Beth Mancuso who then called the housing department.

49. The housing department called the local/Stockton Police Department and Darius Edwards, Complex Director of the Office of Residential Life at Stockton University who was in charge of dorms, "L through P".

50. Accompanied with Darius Edwards was a female Title IX coordinator of Stockton University, whose name is unknown to the Plaintiff.

51. The local/Stockton Police Department responded, and thereafter launched an investigation into the sexual assault.

52. Around lunch time B.C. drove the Plaintiff to Atlantic Care (a satellite facility of Atlantic City Mainland Hospital) in Atlantic City.

53. After viewing the video posted by the Defendant, M.R. realized she had been sexually assaulted/raped.

54. The Plaintiff immediately told that authorities and was directed to go to Atlantic Care because there were no rape kits available at Atlantic City Mainland Hospital.

55. Prior to leaving for the hospital, the Plaintiff had not taken a shower or brushed her teeth. The Plaintiff also brought her bed sheets in a duffle bag to the hospital with discharge on it.

56. The Defendant's DNA was found in a specimen taken from M.R. which confirmed the sexually assault/rape.

57. The tests of M.R. that were done at the Hospital came back positive for Gonorrhea, a sexually transmitted disease, which she contracted through the sexual assault/rape committed by the Defendant Zachary Madle.

58. After the examination was completed two detectives spoke with the Plaintiff.

59. While at the hospital the Defendant texted the Plaintiff asking whether she had reported his watch and wallet to the Police and that he could not find them, which she found unusual.

60. The Plaintiff asked the Defendant to take down his "Snapchat stories" in a text message. The Defendant only deleted two of the videos, but kept the video of him sexually assaulting the Plaintiff's vagina available for the public to see.

61. The Defendant had received texts throughout the day referencing him as the "King of Snapchat".

62. The Plaintiff has not seen the Defendant since and has had no contact via texting or phone calls.

63. Upon returning from the hospital on February 15, 2018 Darius Edwards proposed the idea of withdrawing for the remainder of the semester, in which M.R. had already paid for and was not offered any type of refund.

64. Detective Anthony Lacovara from Stockton's Police Department stated to the Plaintiff that this incident was not the first incident involving Pi Kappa Phi.

65. Detective Anthony Lacovara from Stockton's Police Department contacted Stacey Rose, Assistant Director of Stockton's University's Office of Student Rights & Responsibilities and set up a meeting between Ms. Rose and M.R.

66. The meeting took place in Ms. Rose's office, and Ms. Rose apologized for what M.R. was forced to go through, and offered to ban Defendant Zachary Madle from Campus in which M.R. agreed to.

67. Following the sexual assault, M.R. began failing her classes as she struggled to deal with pain, anguish, and desires to commit suicide as a result of the sexual abuse she suffered.

68. As a result of her failing academics, Stockton University placed M.R. on academic probation and offered her the opportunity to return in the Fall of 2018.

69. M.R. filed a police report with the Atlantic County Prosecutor's Office on February 15, 2018.

70. Defendant Madle was charged with invasion of privacy and posting online videos.

71. Defendant Madle's pre-indictment hearing was scheduled for June 21, 2018.

**COUNT ONE**
**VIOLATION OF TITLE IX AS TO DEFENDANT STOCKTON UNIVERSITY (20 U.S.C. § 1681, et seq.) (Retaliation by Withholding Protections Otherwise Conferred by Title IX)**

72. Stockton University had reassured Plaintiff that they would investigate the attack regardless of whether the matter was referred to law enforcement.

73. Once Plaintiff insisted upon involving law enforcement for a criminal investigation, however, the University retaliated against Plaintiff by declining to investigate the matter or to otherwise comply with their responsibilities as mandated by Title IX.

74. Fellow students harassed Plaintiff for reporting her attack to the University.

75. Stockton University has been on notice of past incidents involving rape and sexual assault, underage drinking, and

fighting, involving Stockton students and Pi Kappa Phi members and declined to intervene to stop it.

## COUNT TWO
### VIOLATION OF TITLE IX AS TO STOCKON UNIVERSITY (20 U.S.C. § 1681, et seq.) (The School's Deliberate Indifference to Alleged Sexual Harassment)

76. The sex-based harassment articulated in the Plaintiffs' General Allegations was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

77. The Defendant University created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because a) Plaintiff was a member of a protected class; b) she was subjected to sexual harassment in the form of a sexual assault by a former student; c) she was subjected to harassment based on her sex; and d) she was subjected to a hostile educational environment created by the University's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

78. Defendant Stockton University and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and

16

discipline Plaintiff's attacker in a timely manner and consistent with its own policy and federal and state law.

79. The Defendant Stockton University's failure to promptly and appropriately respond to the alleged sexual harassment, resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

80. Defendant Stockton University failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff.

81. Defendant Stockton University persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

82. Defendant Stockton University engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

83. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

84. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to her rights under Title IX.

### COUNT THREE
### 1983 VIOLATION AS TO DEFENDANTS STOCKON UNIVERSITY, (42 U.S.C. § 1983)

85. Under the Fourteenth Amendment, Plaintiff had the right as a public school student to personal security and bodily integrity and Equal Protection of Laws.

86. Defendants Stockton Employees were all state actors acting under the color of state law.

87. Defendants each subjected Plaintiff to violations of her right to personal security and bodily integrity and Equal Protection of Laws by: failing to investigate Zachary Madle and Pi Kappa Phi's misconduct; failing to appropriately discipline Zachary Madle and Pi Kappa Phi; failing to adequately train and supervise Stockton Employees; and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by Zachary Madle and Pi Kappa Phi.

88. Stockton University has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against Stockton University students

in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

89. On information and belief, the University has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other Stockton University students.

90. The University's policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

91. Defendants Stockton University and Zachary Madle are or were at the time of events complained of within, policymakers for the purpose of implementing the University's unconstitutional policies or customs.

92. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a direct and proximate result of Defendant University's deliberate indifference to her rights under the Fourteenth Amendment.

<u>**COUNT FOUR**</u>
**LIABILITY FOR FAILURE TO TRAIN, SUPERVISE, AND PROTECT STUDENTS**
**FROM SEXUAL ASSAULT AS TO DEFENDANT STOCKTON UNIVERSITY**
**(42 U.S.C. § 1983)**

93. Defendant Stockton Employees, were "state actors" working for Stockton University, a federally funded school system.

94. Defendant Stockton Employees acted under "color of law" when refusing to respond to Plaintiff's sexual assault on school premises.

95. Defendant Stockton Employees failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

96. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

97. Defendant Stockton Employees should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

98. Defendant Stockton Employees each violated Plaintiff's right to equal access by:

a. Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation;

c. Failing to take steps to protect the Plaintiff as necessary, including interim steps taken prior to the final outcome of the investigation;

d. Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence. The procedures must include an equal opportunity for both parties to present witnesses and other evidence and the same appeal rights;

e. Failing to use a preponderance of the evidence standard to resolve complaints of sex discrimination in grievance procedures; and

f. Failing to notify both parties of the outcome of the complaint.

99. Defendant Stockton University violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

100. These policies and/or practices constituted disparate treatment of females and had a disparate impact on female students.

101. Defendants' actions and lack of actions were the proximate cause of Plaintiff's emotional distress and psychological damage, and her character and standing in her community have suffered from the harassment fostered as a result of Defendant Stockton University's deliberate indifference to her right to equal protection under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

22

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT FIVE
### VIOLATION OF THE JEANNE CLERY DISCLOSURE OF CAMPUS SECURITY POLICY AND CAMPUS CRIME STATISTICS ACT (CLERY ACT)

102. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

103. The Clery Act, passed in November 1990, requires that higher education institutions whose students receive federal financial aid collect and report crime data to the U.S. Department of Education.

104. A 1992 amendment to the Clery Act established the Campus Sexual Assault Victims' Bill of Rights, requiring schools to provide certain basic rights to survivors of sexual assaults on campus, including:

105. Giving the alleged victim and the alleged assailant equal opportunity to have others present in disciplinary proceedings and equal notification of the outcome of such proceedings;

106. Notifying alleged victims of the availability of counseling services, and of their right to pursue remedies through local police;

23

107. Notifying alleged victims that they have the option of changing classes and dormitory assignments in order to avoid their alleged assailants;

108. The Clery Act requires colleges and universities to do the following with regards to sexual assault reports: 1) Publish an Annual Security Report; 2) Disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities; 3) Issue timely warnings about Clery Act crimes which pose a serious or ongoing threat to students and employees; and 4) Devise an emergency response, notification, and testing policy.

109. Defendant Stockton University failed to disclose crime statistics for incidents that occur on campus, in unobstructed public areas immediately adjacent to or running through the campus and at certain non-campus facilities;

110. Defendant Stockton University failed to issue timely warnings about crimes involving Pi Kappa Phi, which posed a serious and ongoing threat to students, that Stockton University allowed to occur.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SIX
### SEXUAL ASSAULT/SEXUAL ABUSE

111.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

112.    At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus and a former member of Pi Kappa Phi at Stockton University.

113.    On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink

25

without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

114.   All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff M.R. and thereby put her in imminent apprehension and fear for her well-being.

115.   All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

116.   Plaintiff did not and could not consent to the acts, and any purported consent was secured through fraud, deception and undue influence, coercion and duress thereby rendering it void.

117.   Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

118.   As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

26

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

119.   All defendants are responsible for sexual assault of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may

constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SEVEN
## AGGRAVATED ASSAULT

120.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

121.    At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

122.    On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

123.    Defendants attempted to cause serious bodily injury to plaintiff purposely, knowingly, or under circumstances manifesting an extreme indifference to the value of human life.

124.    Defendants attempted to cause significant bodily injury to plaintiff knowingly, under circumstances manifesting extreme indifference to the value of human life, or recklessly to cause such significant bodily injury.

125.     As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

126.     All defendants are responsible for aggravated assault of Plaintiff.  All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the aggravated assault of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT EIGHT
### SEXUAL BATTERY

127. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

128. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

30

129.     On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

130.     During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff, M.R. by an act of sexual contact or sexual penetration for sexual gratification by duress and force.

131.     During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by sexual contact, by an intentional touching, either directly or through clothing, of the plaintiff M.R.'s intimate parts for the purpose of sexually arousing or sexually gratifying the Defendant Zachary Madle, by duress and force.

132.     During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly, recklessly, and negligently caused harm to plaintiff by an act of sexual contact or sexual penetration between the plaintiff and Defendant Zachary Madle, for sexual gratification by duress and force.

133.     During the relevant times alleged herein Defendant Zachary Madle purposefully, knowingly, intentionally, carelessly,

recklessly, and negligently caused harm to plaintiff by sexually contacting, battering, harassing, touching, penetrating plaintiff, M.R. for sexual gratification by duress and force.

134.    During the relevant times alleged herein, Defendant Zachary Madle grabbed and groped the plaintiff for the purpose of sexually arousing or gratifying Defendant Zachary Madle and posted the videos publicly on Snapchat.

135.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

32

136.    All defendants are responsible for sexual battery of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT NINE
## CIVIL BATTERY

137.   Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

138.   At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

139.   On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

140.   Defendants caused actual harmful and offensive touching of Plaintiff with the intent to cause offensive touching of Plaintiff.

141.   Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

142.   Plaintiff did not consent and could not consent to the touching which was against her will and any failure to report the incidents was the result of overwhelming mental duress, undue influence and coercion.

143.   Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health and well-being.

34

144.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

145.    All defendants are responsible for Civil Battery of Plaintiff.  All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the battery of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT TEN
### FALSE IMPRISONMENT

146. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

147. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus

148.    On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

149.    At all times relevant hereto, while Defendant Zachary Madle perpetrated his sexual battery, sexual assault, battery and assault, of the plaintiff, the defendant knowingly restrained Plaintiff unlawfully, interfering substantially with her liberty then sexually assaulted her.

150.    The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

151.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

152.     All defendants are responsible for false imprisonment of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

38

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT ELEVEN
### INVASION OF PRIVACY

153. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

154. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, § 652B).

155. Plaintiff possessed a reasonable expectation of privacy inside of her dormitory room at Stockton University.

156. Defendants violated the reasonable expectation of privacy by remaining in the plaintiff's dorm room while M.R. was blacked out, by forcing M.R. who was underage, to consume large amounts of alcohol. While the plaintiff was asleep, the Defendant began to undress, touch, rub, and penetrate the plaintiff.

157. Defendant Stockton University failed to provide reasonable and dormitory accommodations for the Plaintiff M.R. she was a resident on campus.

158.     As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.   Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

159.     All defendants are responsible for Plaintiff's invasion of privacy.   All   defendants   acted   carelessly,   recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT TWELVE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

160. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

161. At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

41

162.    On at least one occasions the Defendant, Zachary Madle used a date rap drug in which he placed into the plaintiff's drink without her knowledge, to engage in unlawful sexual contact with the plaintiff without her consent.

163.    Defendant Zachary Madle by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this Complaint, including, but not limited to, all for the sexual gratification of defendant, Zachary Madle.

164.    The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

165.    Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

166.    The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

167.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished

42

enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

168. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and

43

her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT THIRTEEN
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

169.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

170.    At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus.

171.    Defendant Zachary Madle by duress and intimidation, caused Plaintiff to engage in sexual contact with him, which included the humiliating acts set forth in previous counts of this

Complaint, including, but not limited to, all for the sexual gratification of defendant, Zachary Madle.

172.    The sexual abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress and mental anguish and other physical and psychological injuries including repression of memory.

173.    Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate sexual touching and other misconduct in their relationships with Plaintiff that was posted publicly on Snapchat would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

174.    The sexual misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

175.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the

future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

176. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual

assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT FOURTEEN
## NEGLIGENT HIRING

177.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

178.    Defendant Stockton University entrusted Defendants Stockton Employees who hired Defendants Stockton Employees and Resident Assistants.

179.    Defendant Stockton University, as an employer, at the time of hiring employees, Defendant Stockton Employees, had reason to believe, or could have determined by reasonable investigation, that the employee were dangerous and/or ill-equipped to handle perform their duties  and hired them anyway, which proximately caused injury to M.R. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

180.    Defendant Stockton University as an employer knew or had reason to know of the particular unfitness, incompetence or

dangerous attributes of the employees, Defendant Stockton Employees.

181.    Defendant Stockton University and Defendants Stockton Employees, as an employer could have reasonably foreseen that hiring a person with the attributes of the employees, Stockton Employees created a risk of harm to others, whether on or off the premises.

182.    Defendants Stockton Employees showed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

183.    Defendant Stockton University and Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Defendants Pi Kappa Phi to exit off campus when Stockton University had knowledge of Pi Kappa Phi's ongoing misconduct.

184.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will

48

suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT FIFTEEN
### NEGLIGENT SUPERVISION

185.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

186.    Defendants Stockton Employees and Resident Assistants were hired and chosen by Defendant Stockton University.

187.    By hiring the Defendant Stockton Employees the Defendant Stockton University accepted the responsibility of supervising these employees.

188.    Defendants Stockton Employees, and Defendant Stockton University, the employees, managers, training staff, and/or supervisors failed to properly monitor the Defendant Employees. Based on external factors and the entirety of the circumstances, a reasonable person would expect a higher level of supervision.

189.    Plaintiff sustained an injury, which was a direct result of the failure to supervise.

190.    Defendants Stockton University and Defendant Stockton Employees in their roles failed to maintain and implement a practical sexual abuse/harassment policy, which is evidenced by the failures of Stockton Employees to report the sexual abuse of M. R.

191.     Stockton Employees failed to reasonably supervise Pi Kappa Phi and other Greek life, which led to M.R.'s foreseeable injuries.

192.     A reasonable supervisor could have seen this incident coming and prevented it from happening and/or would have reported the sexual abuse once gaining knowledge of it.

193.     If there was proper supervision, plaintiff would not have been sexually assaulted by Defendant Zachary Madle. Rather, Defendant Zachary Madle was granted unfettered access to M.R. dormitory room which allowed him to sexually abuse M.R.

194.     As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and

treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

195.   Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants Zachary Madle/Stockton Employees.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SIXTEEN
## NEGLIGENT RETENTION

196.   Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

197.   At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus

198.   Defendant Stockton University, learned of Defendants Stockton Employees Defendant Zachary Madle's/ Pi Kappa Phi's dangerous propensities.

199.   Defendant Stockton University, retained negligent Defendants Stockton Employees after learning of their dangerous propensities after they was hired.

200.   Defendant Stockton University and Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff M.R.

201.   As a result, Stockton University and Defendant Stockton Employees, facilitated Zachary Madle's and Pi Kappa Phi's predatory behavior.

202.   As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

203.  Defendant Stockton University, Defendants Stockton Employees acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employee the Defendant Zachary Madle after learning of his dangerous propensities.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages,

loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## COUNT SEVENTEEN
### VICARIOUS LIABILITY

204.   Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

205.   At all times relevant, Zachary Madle, was an alumni of Stockton University who was present on Stockton University's campus

206.   Defendant Stockton University, Defendants Stockton Employees as an employer, hired Stockton Employees to perform services in the affairs of Stockton University and who with

respect to the physical conduct in the performance of the services is subject to Stockton University, Defendants Stockton Employees control or right to control.

207.   Defendant Stockton University, Defendants Stockton Employees exercised control over the details of the work, by which the distinct business all Defendants were engaged in, holding them vicariously liable for the Defendant Employees' actions, which happened through their course of employment.

208.   Defendants Stockton University, Defendants Stockton Employees did not take appropriate action to prevent harm to others, such as the plaintiff, M.R.

209.   As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.   Plaintiff's self-esteem and ability to trust others

has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

210. Defendant Stockton University. acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining employees Defendant Stockton Employees is therefore vicariously liable for their actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or

contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT EIGHTEEN
### RESPONDEAT SUPERIOR

211. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

212. At all relevant times, all defendant employees of Stockton University, were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

213. As a result, Stockton University, Defendants Stockton Employees facilitated Zachary Madle's/ Pi Kappa Phi's predatory behavior.

214. Consequently, Stockton University is liable under the doctrine of respondeat superior for their tortious actions.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT NINETEEN
### RATIFICATION

215. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

216. Defendants Stockton Employees were agents, directors, and employees of Stockton University.

217. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants Stockton Employees and Stockton University.

218. All acts or omissions alleged of were ratified by Stockton University. Stockton University had investigated or knew of the acts and omissions of Zachary Madle/S Pi Kappa Phi's and Stockton University's, employees, managers, supervisors, executives, and directors were informed that Zachary Madle/ Pi Kappa Phi's was sexually abusing female employees and refused to take any action to stop him.

219. Moreover, Stockton University's. managers, supervisors, executives, and directors hid this information

220. Despite knowledge of Zachary Madle's/ Pi Kappa Phi's sexual misconduct, no disciplinary action was taken to deter or prevent this type of misconduct that was known of occurring throughout the Stockton University campus.

221. As a result, Stockton University, Defendants Stockton Employees facilitated Zachary Madle's/ Pi Kappa Phi's predatory behavior.

222. Stockton University, is thus responsible for Zachary Madle's/ Pi Kappa Phi's acts of assault, battery, sexual abuse, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may

constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT TWENTY
### FAILURE TO WARN/MISREPRESENTATION

223. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

224. Defendant Stockton University, failed to do their due diligence, which would have revealed to Stockton students information about the dangers and sexual misconduct associated with such Defendants Zachary Madle/ Pi Kappa Phi.

225. Defendant Stockton University, failed to warn that Defendant Pi Kappa Phi was a threat to public safety.

226. Defendant Stockton University, failed to take even minimal efforts to determine whether the employee was a threat to the public.

227. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks;

anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

228. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by Pi Kappa Phi to exit and maintain housing as a unregistered fraternity near the Stockton University campus.

229. Stockton University after learning of Pi Kappa Phi dangerous propensities and failing to warn the plaintiff, is therefore vicariously liable for Zachary Madle/ Pi Kappa Phi actions against the plaintiff.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for

Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT TWENTY-ONE
### GROSS NEGLIGENCE

230. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

231. Defendant Stockton University owed a heightened duty to M.R. to exercise reasonable care in the planning and providing of proper accommodations for M.R. as a Freshman resident living on Stockton's campus.

232. Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Zachary Madle unfettered access to M.R.'s dormitory bedroom and Pi Kappa Phi to maintain housing in close proximity to Stockton University's campus.

233. Defendant Stockton University had a heightened duty of care to M.R. because of the inherent risk and prior history of Defendant Pi Kappa Phi that was already made known to Stockton University.

234. Defendant Stockton University breached their legal duty to M.R. and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

235. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to M.R.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate

conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

### COUNT TWENTY-TWO
### PUNITIVE DAMAGES

236. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

237. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

238. The Defendants' conduct had a very serious likelihood that serious harm would arise.

239. The Defendants' had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

240. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

241. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

242. Defendant Stockton University had no proper implementation of a sexual abuse policy in place at the time of abuse.

243. Even if Stockton University did have a token policy in place, it is clear based on the events of the case that it was not enforced or taught properly and supported with adequate training causes which is equal to not having a policy at all.

244. The lack of a policy is evident form the moment M.R. reported the incident to Stockton Police.

245. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent physical injuries.

246.  As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

247.  Defendant Stockton University acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining Stockton Employees who had learned of the dangerous propensities associated with Pi Kappa Phi and failed to warn the plaintiff, and is therefore vicariously liable for Zachary Madle/ Pi Kappa Phi actions against the plaintiff.

## COUNT TWENTY-THREE
### FICTITIOUS PARTIES

248. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

249. JANE AND JOHN DOES (1-5)(Fictitious Individuals); are fictitious names for persons or entities which have not yet been identified but whose identities will be supplemented when ascertained by the plaintiff.

250. Said defendants may have played a role in the construction, arrangement, instrumentation or maintenance of the aforementioned premises, and thereby may have caused or contributed to the plaintiff's injuries.

251. Plaintiffs hereby reserve their right to amend the Complaint as a result of pleading such fictitious parties.

252. John and Jane Does (1-5) are individuals who may have discriminated against the Plaintiff, but are as yet unknown or not necessarily yet germane to the allegations alleged in the Complaint.

253. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe

embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her family's unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant University to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by

69

eliminating any hostile environment that may arise from or contribute to it; statutory interest; Costs; and Reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), New Jersey Revised Statutes § 10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.

FUGGI LAW FIRM, P.C.

DATE:

ROBERT R. FUGGI, JR., ESQ.

## JURY DEMAND

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## PLAINTIFF'S DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate. Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## NOTICE TO PRODUCE

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.
2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.
3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.
4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.
5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.
6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.
7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.
8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.
9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.
10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously answered by you in this action. All depositions noticed by you or taken of you.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.